UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM STAMNES, BRUCE MCGEOCH, EUNICE MCCALLUM, JOAN RAMOS, STEPHEN CLOUSER, DAVID KLINGLER, KENNETH HERRINGTON, and JAMES YOUNG individually and on behalf of all other similarly situated individuals,<br><br>*Plaintiffs*,<br><br>v.<br><br>FIFTH THIRD BANK, NATIONAL ASSOCIATION, and DIVIDEND FINANCE INC.<br><br>*Defendants*. | Case No.<br><br>Judge<br><br>CLASS ACTION COMPLAINT |

Plaintiffs William Stamnes, Bruce McGeoch, Eunice McCallum, Joan Ramos, Karen Stephen Clouser, David Klingler, Kenneth Herrington, and James Young (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, assert the following against defendants Fifth Third Bank, N.A. ("Fifth Third") and Dividend Finance Inc. ("Defendant") based upon personal knowledge, information and belief, and the investigation of counsel.

## INTRODUCTION

1.     This action arises out of Defendants' unfair, unlawful, and deceptive business practices undertaken in connection with the origination and servicing of thousands of loans taken out by borrowers to purchase residential solar photovoltaic systems ("Solar Panel System(s)") for their homes during from 2018 to the present (the "Class Period").

2.     Defendants own and operate the residential and home improvement financing business "Dividend" and/or "Dividend Finance." Dividend provides loans to homeowners to enable them to purchase Solar Panel Systems.

3.      Dividend earns revenue by, *inter alia*, charging consumers fees, charging its partner sales and installation companies (such as Vision Solar) fees, and by securitizing the loans Dividend issues and sales of those securities to third-party investors. The more loans Dividend issues, the more revenue Dividend earns from these activities.

4.      To originate loans for its business, Dividend partnered with and relied upon the now-bankrupt solar sales and installation company Vision Solar. Dividend maintained and embraced this partnership despite Dividend's awareness that Vision Solar was engaged in rampant unfair and deceptive acts and practices.

5.      In addition to Defendants deceptively and unfairly hiring Vision Solar to originate loans for Defendants' benefit, Defendants themselves directly engaged in unfair and deceptive conduct in interactions with Plaintiffs and members of the Class by failing to disclose the large Platform Fees and/or Contractor Fees (the "Platform Fee") Defendants added to the loan balances of Plaintiffs and members of the Class.

6.      In recognition of the egregiousness of Defendants' and Vision Solar's conduct, the attorneys general of Arizona (the "AZ AG"), Connecticut (the "CT AG"), Florida (the "FL AG"), and Minnesota ("MN AG"), as well as the U.S. Department of Justice (the "DOJ"), and the Federal Trade Commission (the "FTC") have all filed enforcement actions against Defendants or Vision Solar.

7.      Defendants' conduct has saddled thousands of homeowners throughout the United States with tens of thousands of dollars of oppressive debt taken out for the purchase of what turned out to be non-functioning, non-permitted Solar Panel Systems installed on their residences in addition to extensive damage of the homes of Plaintiffs and members of the Class caused by the work of un-licensed or inadequately licensed contractors used by Vision Solar.

8.      Plaintiffs and members of the Class thus seek relief from Defendants in the form of restitution, disgorgement of profits, recission of the sales and financing agreements, and damages.

## PARTIES

9.      Plaintiff William Stamnes (together with Plaintiff Linda Stamnes, the "Stamnes Plaintiffs") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

10.      Plaintiff Bruce McGeoch ("Plaintiff McGeoch") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

11.      Plaintiff Eunice McCallum ("Plaintiff McCallum") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

12.      Plaintiff Joan Ramos ("Plaintiff Ramos") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

13.      Plaintiff Stephen Clouser (together with Plaintiff Karen Clouser, the "Clouser Plaintiffs") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

14.      Plaintiff David Klingler ("Plaintiff Klingler") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

15.      Plaintiff Kenneth Herrington ("Plaintiff Herrington") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

16.      Plaintiff James Young ("Plaintiff Young") is a citizen of the State of Florida and was at all relevant times domiciled in the State of Florida.

17.     Defendant Fifth Third Bank, National Association ("Fifth Third") is a nationally chartered bank organized under the laws of Ohio. Fifth Third maintains its principal place of business at 38 Fountain Square Plaza, Cincinnati, Ohio, 45202.

18.     Defendant Dividend Solar Finance LLC is a corporation incorporated and organized under the laws of the State of Delaware. Defendant Fifth Third acquired Dividend in May 2022 and since then has operated and marketed Dividend Finance as "a division of Fifth Third Bank."

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Class exceed $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a State different from Defendants.

20.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because each Defendant transacts business in, is found in, and/or has agents in this District and because some of the actions giving rise to this complaint took place within this District.

21.     Each Defendant transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the conduct alleged herein throughout the United States, including in this District. The conduct was directed at, and has had the effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## SUBSTANTIVE ALLEGATIONS

22.     Defendants own and operate "Dividend Finance", a self-described "fintech" lending company that operates throughout the United States, including in Arizona, Connecticut,

Florida, and Massachusetts. Defendants' business is making loans to homeowners to enable those homeowners to purchase Solar Panel Systems for their homes.

23.     Dividend does not employ personnel to generate sales and loan originations by, for example, touting the benefits of Solar Panel System or the benefits of using Dividend as a lender to obtain funds to purchase a Solar Panel System. Instead, Dividend partners with and relies entirely on Solar Panel System sales and installation companies to generate Solar Panel System sales and the corresponding loans—provided by Dividend—made to the homeowners to enable them to purchase the Solar Panel Systems. To this end, Dividend partnered with the solar panel sales and installation company Vision Solar LLC ("Vision Solar"), a now-insolvent New Jersey-based company which filed for Chapter 7 bankruptcy protection on December 28, 2023.

24.     Defendants instructed Vision Solar to emphasize the benefits of Solar Panel System ownership and the low financing costs associated with Dividend's loans. This emphasis on extremely low financing costs, coupled with the touted benefits of Solar Panel System ownership and resulting energy savings and tax benefits, enabled Vision Solar to induce consumers such as Plaintiffs and members of the Class to purchase Solar Panel Systems with funds borrowed from Dividend (rather than pay with cash or shop around for loans from their own banks, credit unions, or other lenders).

25.     Defendants dictate the terms and methods for their solar sales and installation partners such as Vision Solar to market and sell Dividend's loans. Dividend provides training to solar companies on how to market their loan products, including video training and training slides on its loan products and how to sign consumers up for its loans.

26.     Dividend also provides solar companies with a tool for designing sales proposals around its loans. Solar companies that partner with Dividend, such as Vision Solar, include features of the loans as a prominent and important component of their sales proposals.

27.     Dividend's loan options were available to any consumer who purchased a Solar Panel System from Vision Solar and met baseline qualification standards, including a minimum credit score and home ownership. The individualized interest rate and fees applicable to a given borrower were not based on individualized credit risk; instead, the annual interest rate and fees for a given loan product are the same for every qualifying borrower.

28.     Importantly, because the lending transactions between Plaintiffs and Dividend are consumer credit transactions, each Dividend financing agreement entered into by Plaintiffs and members of the Class and Defendants contained the following "Holder Rule" language:

> **Claims and Defenses. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

29.     The effect of the above "Holder Rule" language is that all claims and defenses Plaintiffs may have against Vision Solar, the seller of the Solar Panel Systems, may also be maintained against Defendants.

## I.     VISION SOLAR USED UNFAIR AND DECEPTIVE BUSINESS PRAFTICES TO ORIGINATE LOANS FOR DEFENDANTS BENEFIT AND WITH DEFENDANTS' KNOWLEDGE.

30.     Defendants' partnership with Vision Solar was highly profitable but, as demonstrated herein, was dependent on unfair and deceptive conduct. Defendants knowingly

relied on Vision Solar to drive sales and loan originations via rampant unfair and deceptive conduct by making misrepresentations to Plaintiffs and members of the Class(es).

31.     Dividend encouraged Vision Solar to sell as many Solar Panel Systems as possible as quickly as possible. To that end, Dividend emphasized the "low APR & low fee products" in presentations to Vision Solar, and that Dividend's financing process and application approval process are "fast" and executed on the salesperson's tablet during their sales visit.

32.     Dividend told solar companies like Vision Solar to "Focus on Selling, Not Fixing Paperwork" and that they can "Sell, Close, & Go On To The Next One" by using and marketing their loans to finance consumers' purchases. Dividend also offers prizes to salespersons that reach thresholds for loan sales, such as gift cards and devices.

33.     For its part, Vision Solar systematically misrepresented the services they would provide to Plaintiffs and members of the Class, the capabilities of the Solar Panel Systems they sold, and the financial benefits of Solar Panel System ownership to provide Defendants with a continuous supply of customer borrowers.

34.     Astonishingly, Defendants continued their partnership with Vision Solar even as thousands of Vision Solar customers who financed through Defendants complained directly to Defendants, after multiple television stations exposed Vision Solar's practices *and* after multiple state attorneys general and federal law enforcement agencies filed suit against Vision Solar for its conduct.

A.     **VISION SOLAR'S UNIFORM WRITTEN MISREPRESENTATIONS INDUCED PLAINTIFFS AND MEMBERS OF THE CLASS TO BORROW FROM DEFENDANTS.**

35.     Vision Solar provided each prospective customer with a uniform set of written representations stating that Vision Solar would obtain all necessary permits and licenses necessary

7

to install the Solar Panel Systems despite knowing that Vision Solar would do not such thing. Vision Solar required each customer to review these representations in the Vision Solar sales and installation agreement and sign the document. All Plaintiffs and members of the Class received, acknowledged reviewing and relied on these representations.

36.     Specifically, Vision Solar made the following uniform written representations to every prospective customer, including Plaintiffs and members of the Class. To purchase a Solar Panel System from Vision Solar, a customer was required to sign the standard uniform contract containing these representations acknowledging that they had read its terms. The contract contained the following representations:

     a.     "The services to be provided by Vision Solar shall include . . . All necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"

     b.     "All work performed by Vision Solar will be done in accordance with local, state, and national electrical codes."

     c.     "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."

37.     Despite these representations, Vision Solar did not even attempt to obtain permitting and licensing requirements in the jurisdictions they operated in, including Arizona, Connecticut, Florida, and Massachusetts a fact admitted to by Vision Solar publicly in a television interview and alleged in the lawsuits brought by the attorneys general of Arizona, Connecticut, and Florida.

38.     Instead, and as alleged by numerous state attorneys general, Vision Solar regularly and knowingly installed Solar Panel Systems without obtaining the required permitting, which meant that the Solar Panel Systems were not hooked up to the power grid and were not operational.

39.     Vision Solar also applied for town electrical permits falsely using the credentials of a licensed electrician not employed with Vision Solar at the time of the applications or without the authorized signature of such electrician.

40.     Vision Solar also offered and installed Solar Panel Systems without a duly licensed electrician to perform the electrical work, including but not limited to the connection of the Solar Panel Systems to the residence's existing electrical system or utility meter.

41.     These failures were in direct contravention of the uniform written representations made to customers, including Plaintiffs.

42.     Despite the above, the resulting customer complaints, and regulatory action, Defendants continued their partnership with Vision Solar, allowing Vision Solar's team to originate loans for Dividend despite the mounting evidence that Vision Solar was doing so via unfair and deceptive practices.

**B.      VISION SOLAR EMPLOYED UNFAIR, HIGH-PRESSURE TACTICS DESIGNED TO ORIGINATE LOANS FOR DEFENDANTS.**

43.     In addition to relying on the above systemic misrepresentations, Vision Solar's salespeople employed "high-pressure", unfair tactics designed to overcome consumers' resistance, such as:

a.     Deliberately targeting populations Vision Solar believed would be vulnerable to undue influence, such as low-income areas and retirement communities;

b.     Staying in consumers' homes beyond the period they were welcome, only agreeing to leave if a consumer signed a sales and financing agreement;

c.     Discouraging consumers from seeking legal advice before signing agreements;

d.     Presenting contracts or documents for electronic signature on a salesperson's mobile phone or tablet, depriving consumers of the opportunity to adequately review the terms of the agreements; and

e.     Delaying the provision of a copy of the signed agreements to consumers until after the recission period passed, depriving homeowners of the ability to exercise their rights of cancellation.

### C.     VISION SOLAR USED UN-LICENSED OR INADEQUATELY LICENSED CONTRACTORS TO INSTALL SOLAR PANEL SYSTEMS.

44.     As alleged by multiple state attorneys general, despite the uniform representations made regarding compliance with state, local, and national electric codes, Vision Solar routinely applied for town electrical permits falsely using the credentials in Arizona, Connecticut, and Florida of a licensed electrician not employed with Vision Solar at the time of the applications and/or without the authorized signature of such electrician.

45.     Additionally, Vision Solar offered and installed Solar Panel Systems without a duly licensed electrician to perform the electrical work, including but not limited to the connection of the Solar Panel Systems to the residence's existing electrical system or utility meter

46.     Consistent with these practices, Vision Solar used unlicensed and/or inadequately licensed contractors to install the Solar Panel Systems at the residences of Plaintiffs.

47.     That is, the Solar Panel Systems installations that were performed at Plaintiffs' properties were not done in compliance with the local, state, and/or federal electrical codes.

**D.     VISION SOLAR FALSELY CLAIMED INSTALLATIONS WERE COMPLETE AND SOLAR PANEL SYSTEMS WERE FUNCTIONAL TO COLLECT PAYMENT FROM DEFENDANTS**

48.     Despite having failed to obtain the necessary permits for installation of the Solar Panel Systems at the residences of Plaintiffs and members of the Classes, which caused the Solar Panel Systems to not be connected to the power grid, Vision Solar often submitted photographs to Defendants purporting to show completed functional Solar Panel Systems at the residences of Plaintiffs and members of the Class(es) when in fact the Solar Panel Systems shown in the photographs were not functional due to a lack of permitting and/or other installation defects.

49.     For example, Vision Solar submitted photographs to Defendants of the Solar Panel System installed at Plaintiffs' home, despite the fact that the Solar Panel System was not connected to the power grid.  This caused Defendants to place the loans of Plaintiffs and members of the Class(es) into repayment despite the fact that the Solar Panel Systems were not functioning.

50.     Vision Solar did this because Vision Solar knew that Defendants would not take any steps to verify the functionality of Solar Panel Systems before Defendants paid Vision Solar nearly the full contract price.

51.     Indeed, Defendants incentivized Vision Solar to engage in this behavior by paying Vision Solar compensation sometimes amounting to at least 90% of the cash purchase price borrowed by homeowners from Defendants without requiring confirmation (other than a photograph) that the Solar Panel Systems were properly permitted, properly installed, hooked up

to the power grid, or functioning at all. All Defendants required was a photograph of what Vision Solar would claim was a functioning and permitted Solar Panel System.

52.     Vision Solar thus had no incentive to ensure the Solar Panel Systems sold to homeowners such as Plaintiffs and members of the Class were installed properly or functioned as Vision Solar represented, and Defendants took no steps to verify that any Solar Panel System sold by Vision Solar was functioning.

53.     Based on an unverified photograph supplied by Vision Solar and nothing more, Defendants placed the loans originated by Vision Solar into repayment, requiring Plaintiffs to make payments for non-functioning and defectively installed Solar Panel Systems.

54.     Afraid of legal action threatened by Defendants and/or the negative impact to their credit that could result from nonpayment, many Plaintiffs and members of the Class paid thousands of dollars to Defendants while their Solar Panel Systems were not functioning due to a lack of Permission to Operate.

55.     Defendants permitted this behavior and had no incentive to stop it because Defendants do not maintain the risk of loan performance on their books. Unlike traditional banks that finance their loans with deposits and therefore have an incentive to ensure that borrowers are able to make the payments on their loans, Defendants offload repayment risk onto investors, who buy packages of loans called solar asset-backed securities.

56.     Because Defendants sell the loans they issue, any incentive to monitor the behavior of Vision Solar to ensure that the origination of the loans is free of unfairness, deception, or fraud—factors which might hinder repayment—is outweighed by the incentive to simply finalize and issue as many solar asset-backed loans as possible and then offload those loans to third parties.

57.     Defendants' primary concern is thus maintaining the status of the loans it has issued as performing so that investors do not ask questions. To do this, Defendants took steps to actively conceal Vision Solar's conduct from the public, and most importantly, from the third-party investors to which Defendants sell solar asset backed securities, lest they know they are buying bundles of fraudulently induced loans.

58.     For example, to prevent outside knowledge about the non-functioning of Solar Panel Systems, Defendants have occasionally granted deferments to customers who complained about having non-functioning Solar Panel Systems that were installed without the requires permits being obtained and were thus no hooked up to the power grid.

59.     Alternatively, Defendants allowed Vision Solar to make payments to Defendants on behalf of customers whose Solar Panel Systems have not actually been connected to the power grid due to a lack of permitting.

60.     In other instances, Defendants took the position that Vision Solar would be responsible for reimbursing customers who had made payments prior to Vision Solar obtaining Permission to Operate, though Vision Solar rarely, if ever, reimbursed such customers.

61.     Defendants engaged in these actions, and others, to avoid at any cost recognition of the non-performance of loans that they had packaged and sold to third-party investors attributable to unfairness, deception, and/or fraud on the part of one of Defendants' most prolific Solar Panel System loan originators: Vision Solar.

62.     Recognition of the non-performance would not just have objectively reduced the value of the solar asset-backed securities sold by Defendants but also would have subjected it to liability for making misrepresentations regarding the likelihood of performance of the loans they were packaging and selling.

## II.     DEFENDANTS UNFAIRLY AND DECEPTIVELY ADDED LARGE FEES TO THE LOAN BALANCES OF PLAINTIFFS AND MEMBERS OF THE CLASS.

63.     Dividend dictated to Vision Solar that sales proposals by Vision Solar should feature the Dividend loan, emphasize a low interest rate, identify a total price, and indicate that the price was for Solar Panel System parts and for labor for the installation of the Solar Panel System. The proposals featuring Dividend loans also emphasized low monthly installment payments (promised to be matched by savings on utility bills derived from purchased solar-panel systems) over the total price.

64.     However, these proposals *did not include the large upfront "Platform Fee" or Contractor Fee[1] that Dividend and Vision Solar would later add to a prospective customer's loan balance*. Failing to include this information was deceptive, in that it led consumers such as Plaintiffs and members of the Class acting reasonably under the circumstances to believe that their loan would have a lower APR than the actual APR they ended up paying and that they would owe a total loan balance which was lower than the amount they actually ended up owing to Dividend.

65.     Thus, while the interest rates quoted by Vision Solar and Defendants to Plaintiffs and members of the Class initially appeared attractive, this was only because Dividend and Vision Solar concealed the large Platform Fee and added that fee to the stated price of the system to arrive at the larger balance Plaintiffs and members of the Class ended up responsible for repaying.

66.     Defendants' Platform Fee (and the attendant price increase) was hidden from consumers such as Plaintiffs and members of the Class: it was not included in sales proposals that describe the Solar Panel System and financing provided by Vision Solar; it was not included in disclosures of finance costs that Defendants made to Plaintiffs when originating the loan; and

---

[1] The terms "Contractor Fee" and "Platform Fee" are used interchangeably herein.

Vision Solar concealed the fee from Plaintiffs and members of the class when marketing systems and offering payment options.

67.    Furthering the deception, Defendants affirmatively misrepresented to consumers that the entire price and balance of the loan pays for the cost of the system's parts and installation. Defendants also directed Vision Solar to downplay the inflated price in favor of emphasizing low monthly installment payments (to be purportedly offset by electricity savings).

68.    Once Plaintiffs and members of the class agreed to finance with Dividend based on Vision Solar's proposal, Vision Solar representatives entered their name, address, and contact information into Dividend's portal as well as the product (*i.e.*, a Solar Panel System) and loan amount. This usually took place on the salesperson's tablet, and Plaintiffs and members of the class were often shielded from directly observing this process.

69.    When Plaintiffs and members of the class signed up for a loan via Vision Solar and Dividend, Dividend emailed them loan documents. As part of the package of emailed documents, Dividend included a document that identifies "Truth in Lending Disclosures" including the "annual percentage rate" described as "the cost of your credit as a yearly rate," the "finance charge" described as "the dollar amount the credit will cost you," and the "amount financed" described as "the amount of credit provided to you or on your behalf."

70.    The statement further provides an "itemization of amount financed" that breaks down the stated amount financed as entirely including the "principal amount of loan" that is the "amount[] paid to others on your behalf…to seller/contractor for collateral/installation." The finance charge and annual percentage rate identified in the document does not include Dividend's Platform Fee in either calculation.

71.     Dividend also emailed Plaintiffs and members of the class a document entitled "Your Loan Summary" that identified the same low rate as provided as the APR in the Truth in Lending Disclosures document, and which did not factor in or otherwise mention the Platform Fee.

72.     Vision Solar also misleadingly and deceptively communicated that the loan amount identified in the loan documents reflects the amount that is paid to Vision Solar for parts and installation of the system.

73.     Dividend also has conducted calls to borrowers when they execute loan documents. In those calls, they advise and confirm with the borrower that they "agree that the proceeds from the loan will be used to pay for the design and installation of your solar project …, as further described in the purchase or work order between borrower and contractor."

74.     Dividend's loan documents further identify late charges and returned payment fees. No other fees, including the Platform Fee, are identified.

## A.     DEFENDANTS DECEPTIVELY CHARGED PLAINTIFFS AND MEMBERS A HIDDEN UP-FRONT FEE DISGUISED AS COSTS FOR PARTS AND LABOR.

75.     The largest cost to Plaintiffs and members of the class by Dividend as part of the loan is the large Platform Fee imposed at the time of origination and added to the balance of the loan unbeknownst to the consumer. As noted above, the Platform Fee is not included in the calculated "finance charge" or APR disclosed as the cost of financing to the consumer, nor is it otherwise disclosed or identified in any way at any time in the marketing, sales, and loan execution.

76.     Dividend's Platform Fee is charged by Dividend on loans as a percentage of the loan balance, up to 31 percent and added to the balance when the loan is originated. While it is part of the loan balance taken out and owed by Plaintiffs and members of the class, the Platform Fee was not disbursed to Vision Solar for parts and installation. Instead, Dividend retains this

portion of the quoted loan balance. The Platform Fee is part of the loan balance that Plaintiffs and members of the Class must repay over time

77.     Dividend refers to this fee with solar sales and installation companies such as Vision Solar as a "Contractor Fee" or "Platform Fee". For example, Dividend Solar Finance LLC's standard "Solar Financing Program Agreement" and "SOLAR PLATFORM ADDENDUM TO THE SOLAR FINANCING PROGRAM AGREEMENT" used by Dividend with all solar sales and installation companies, including with Vision Solar contains the following language:

> **"Contractor Fee"** is defined as any fee charged by us for maintain the Program, certain services rendered in connection with the Program that is set forth in writing from time to time, or both. The Contractor Fee may also include Platform Fees and Management Fees as defined in the Instructions and Procedures or other Program documents.
> . . .
>
> As of the Effective Date, the Platform Fee (subject to reduction pursuant to the below) shall be [PERCENTAGE]. The [PERCENTAGE] Platform Fee identified in this Section 2(g)(i) is specific to the [LOAN TERMS] APR loan offered by or through Dividend

78.     Other terms of Dividend's contract with solar sales and installation companies make it clear that the loan balance Plaintiffs and members of the Class are responsible for *includes* the Contractor and/or Platform Fee:

<u>PAYMENTS UNDER THE PROGRAM</u>

<u>PAYMENT BY US</u>: We will pay you the *net amount of the Loan proceeds less the amount of all Contractor Fees in accordance* with our Instructions and Procedures in this Agreement. (emphasis added)

79.     The exact percentage of Dividend's upfront "Contractor" or "Platform Fee" which Plaintiffs and members of the class pay for a given loan depends on the loan's term and annual interest rate, as input by Vision Solar. Access to Dividend's books and records would be required to determine the exact percentage and dollar amounts of the Platform Fees nationwide. However,

analysis by the Office of the Minnesota Attorney General of loans issued by Dividend in Minnesota determined the average amount of Dividend's Platform Fee to be approximately 18.8 percent of each borrower's loan amount (including a small number of loans with 0 percent fees) and that the average amount charged to borrowers and added to their loan balance is $9,041.69. Additionally, publicly available contracts between Dividend and solar sales and installation company Power Home Solar LLC established fees of 16% and 15.5%.

80.     The following example illustrates how Dividend's hidden fee increased the loan balances and APR for Plaintiffs and members of the class:

> Assume Dividend's agreement with Vision Solar called for Vision Solar to pay Dividend a 20% "Contractor" or "Platform" fee. Vision Solar would present the cost of the Solar Panel System to prospective customers as $30,000 financed over 20 years at APR of 1.99%. After the customer agreed to these terms, Vision Solar sign the customer up for financing from Dividend and during that process, the loan amount would be inflated by 20% of the original purchase price to include the Contractor/Platform Fee resulting in the customer financing an additional $6,000 (20% of $30,000), for a total of $36,000 over 20 years. The actual APR on this deal is 3.638%, *not* 1.99%.

81.     Individuals that purchased Solar Panel Systems from Vision Solar that did not use financing from Dividend were not charged this Platform Fee. Instead, Vision Solar charged those customers a regular cash price—*i.e.*, their price without Dividend's Platform Fee added—to those who express sufficient interest or request cash offers. In other words, Dividend's Platform Fee is only charged as a condition of financing and is not paid by cash customers.

**B.      DEFENDANTS UNFAIRLY AND DECEPTIVELY RELIED ON CONTRACTUAL FICTIONS TO EVADE DISCLOSURE REQUIREMENTS.**

82.     Because federal and state laws require that lenders include all costs imposed as an incident of credit be included in the calculation of the "finance charge" and "annual percentage rate" prominently disclosed to consumers, Dividend devised contracts that purport to disguise the charge as an overhead cost incurred by Vision Solar rather than a cost of credit borne by Plaintiffs

and members of the Class. But Dividend's fee is paid by the borrower, at Dividend's direction, as a condition of financing.

83.     As stated above, Dividend's contract in other paragraphs makes clear that Vision Solar will charge and collect a cash price and that Dividend's Platform Fee is added to that price to constitute the original loan balance (called the "Contract Price," the "Loan Agreement value," and/or and the "Loan proceeds" in the contract) owed by the consumer. The fee was incurred and paid by the borrowers, such as Plaintiffs and members of the Class, not Vision Solar.

84.     Pursuant to this fiction, Dividend also included provisions in its contract with Vision Solar purporting to require that financed sales be priced "no more than [the system's] actual cash value" and that the sales company has "not increased the purchase price … or added any additional fee for financing" for sales financed by Dividend. But this contract provision is impractical, was not followed by Vision Solar, and not checked or verified by Dividend.

85.     Despite the illusory provision, Vision Solar added the Contractor Fee and/or Platform Fee to the loan balances of Plaintiffs and members of the Class, and Dividend willingly accepted that practice.

86.     Dividend's contracts also provide confused and contradictory rationales for the Platform Fee that further undermine the company's false claim that it is an overhead cost borne by solar companies like Vision Solar. The contract refers to it as a "Contractor Fee" for "services rendered in connection with the [loan] Program" but also states that the fee "may also include Platform Fees and Management Fees" not defined in the contract itself.

87.     Dividend's contractual provisions represent a fiction or contrivance devised to evade loan-disclosure laws.

III.    **DEFENDANTS' AND VISION SOLAR'S CONDUCT HAS HARMED PLAINTIFFS AND MEMBERS OF THE CLASS.**

88.     The unfair and deceptive conduct outlined herein was material to the Plaintiffs' and members of the Class's decisions to purchase Solar Panels Systems via financing from Defendants because they directly influenced the Plaintiffs' and members of the Class's understanding of the costs, benefits, and financing terms associated with the Solar Panel Systems.

89.     Indeed, Plaintiffs and members of the Class would not have agreed to purchase Solar Panel Systems from Vision Solar or enter financing transactions with Defendants had Plaintiffs and members of the Classes known the truth regarding the representations and omissions made by Vision Solar and Defendants.

90.     For example, Vision Solar's uniform written misrepresentations regarding permitting were crucial for Plaintiffs' and members of the Class's confidence in the legality and functionality of the Solar Panel System installations. Plaintiffs would not have agreed to purchase Solar Panel Systems and finance their purchase with Defendants had they known they would be required to pay Defendants for a non-functioning and/or unpermitted system for months or years, or indefinitely.

91.     Vision Solar's uniform written misrepresentations regarding the licensing of the contractors they used to install Solar Panel Systems were similarly crucial for Plaintiffs' and members of the Class's confidence that they would receive Solar Panel Systems which were installed properly without damage to their residences and functioned as promised and intended.

92.     Vision Solar's misrepresentations regarding the federal tax credits associated with the purchase or lease of Solar Panel Systems caused Plaintiffs to believe that they would receive a significant financial benefit from Solar Panel System and that it was a sound investment for the future. The promise of tax credits was a crucial factor in Plaintiffs' decision-making process, creating an expectation of substantial savings that would offset the initial costs of the solar panel

installation, but-for which Plaintiffs would not have obtained large, burdensome loans from Defendants.

93.    Vision Solar's sales representatives made false claims that the Solar Panel Systems would result in significant savings by reducing the amount of power used from the homeowner's current power company. This promise portrayed the purchase of a Solar Panel System as an investment which would "pay for itself" over time and was material to Plaintiffs' and members of the Classes' decisions to purchase Solar Panel Systems and finance with Defendants.

94.    These material misrepresentations were significant for Plaintiffs' decisions to purchase or lease Solar Panel Systems from Defendants. Had Plaintiffs and members of the Classbeen aware of the truth regarding the Solar Panel Systems, Vision Solar's practices, and the terms of the financing agreements with Defendants, Plaintiffs would not have purchased Solar Panel Systems or financed with Defendants. The fraudulent, deceitful, and unfair practices employed by Vision Solar, and perpetrated by Defendants as its financing partner, induced Plaintiffs into purchasing Solar Panel Systems via financing agreements with Defendants yet the Solar Panel Systems did not function at all, or as promised, causing Plaintiffs and members of the Class suffer significant financial losses and damages.

## IV.    DEFENDANTS AND VISION SOLAR ARE THE SUBJECT OF NUMEROUS LAW ENFORCEMENT ACTIONS AND INVESTIGATIONS.

95.    On March 8, 2024, the Minnesota Attorney General's Office filed suit against Dividend Solar Finance LLC alleging that it was engaged in deceptive business practices that harmed Minnesota consumers by concealing large Platform Fees and tacking those fees onto the outstanding loan balances for consumers.

96.    The Minnesota Attorney General's lawsuit follows several actions initiated by state and federal law enforcement authorities. For example, on March 15, 2023, the CT AG initiated a

*parens patriae* enforcement action against Vision Solar for predatory practices and deceptive sales tactics violating the Connecticut Home Improvement Act and the Connecticut Unfair Trade Practices Act. Vision Solar's tactics have been described by CT AG William Tong, as "the worst [the office] has seen." The CT AG's description echoes the experience of Plaintiffs and members of the Class herein – that Vision Solar took advantage of low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that were never activated or were installed without proper permits via unfair, high-pressure sales tactics, including instances of altering the scope of work without consent, overstating tax benefits, and using unlicensed contractors to install Solar Panel Systems. Vision Solar engaged in this conduct for the benefit for Defendants.

97.     The Connecticut Attorney General described Vision Solar's conduct as follows:

We're investigating numerous complaints regarding high-pressure solar industry sales tactics, ***but Vision Solar's predatory practices are far and away the worst we have seen.*** Vision Solar preyed on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated. Their egregious misconduct appears to have violated multiple laws, and we're going to hold them accountable. Our lawsuit seeks to get money back for Vision customers, as well as fines and court orders to stop Vision from engaging in these unfair and deceptive practices.

98.     On July 27, 2023, Arizona Attorney General Kris Mayes, along with the U.S. Department of Justice and the Federal Trade Commission, sued Vision Solar LLC and one of its lead generators, Solar Xchange LLC, and its owner Mark Getts, for violations of the Federal Trade Commission Act, the Federal Telephone Solicitation Rule, the Arizona Consumer Fraud Act, and the Arizona Telephone Solicitations Act. In announcing the action, AZ AG Mayes stated that **"solar is a major investment that should be considered by consumers without being subject to unfair pressure tactics. I will not tolerate dishonest sales practices or harassment through unwanted calls that pressure consumers into unfavorable contracts**." (emphasis added).

99.   On November 7, 2023, Defendant Fifth Third announced in its quarterly 10-Q filing with the U.S. Securities and Exchange Commissions that it "is currently cooperating with investigations related to several civil investigative demands by a number of state attorneys general regarding the lending practices and installer relationships of Dividend Solar Finance, LLC, which the [Fifth Third] acquired in May 2022."

100.   On December 4, 2023, Florida Attorney General Ashley Moody announced her office had filed suit against Vision Solar, stating that Vision Solar had **"misled consumers about the solar panel system installation process and relevant incentives or credits, [and] also allegedly failed to successfully complete the permit requirements in setting up consumers' solar grids, resulting in unexpected fines or liens for the customers."** (emphasis added).

101.   In addition to multiple Attorneys General lawsuits, several news stations have conducted investigations or run stories on the tactics employed by Vision Solar.

102.   In Connecticut, an investigation by NBC Connecticut recounted the story of Ruth Greenberger, a Vision Solar and Dividend Finance customer who was deceptively and unfairly sold a Solar Panel System by for $95,000, fair in excess of a reasonable cost for a Solar Panel System. According to Ms. Greenberger, Vision Solar employed several unfair business practices to pressure her into signing and the system installed does not function. In response to NBC Connecticut, Vision Solar admitted to the accusations, stating "I think in that growth, we made a lot of mistakes. We would move quickly … That created a whole litany of problems that we are now facing today."

103.   In Florida, an investigation by Tampa-based ABC News affiliate WFTS uncovered that there have been over 70 complaints filed with the Florida Attorney General's Office and recounted that:

Tampa retiree Eula Gutierrez and her husband signed up for a $53,000 investment that came with a 25-year payment plan. Gutierrez told the I-Team that the saleswoman convinced her the savings on her power bill would help offset the monthly loan payment of $169. "She said, but look, you're going to be saving from here to no telling when. You're going to be saving every month because your electric bill will be so small," Gutierrez recalled.

104.    Gutierrez said the installers damaged her roof, which caused a leak in her bathroom while putting on the panels last summer, and they never connected her system to the grid. For the last seven months, the panels have sat on her roof without generating a single watt of electricity.

105.    In response to these stories, Vision Solar *admitted to the* misconduct Plaintiffs allege herein:

> As far as permits and installing jobs without them. **We own our past. As we were growing rapidly in your area, we had a problem with our CRM system and for a period of time were installing without permits without knowledge as the system suggested complete and approved**. (emphasis added)

106.    Similarly, an investigative team from a South Florida CBS News affiliate recounted the story of Estela Padilla, a Boca Raton homeowner who "took out a $40,000 loan to finance the panels and is paying $122 toward the loan each month" but found that "[a] year and a half later, she is still paying for the panels but hasn't seen any savings on her energy bill. That's because her panels were never activated or connected to the power grid."

107.    Another Florida news station, Local News 10 of Broward County, Florida, recounted the story of Tracy Walters, who paid Vision Solar a $21,000 deposit only to have Vision Solar disappear for over a year, causing her to have "tears on phone calls" due to frustration.

108.    Similarly, WFTV 9, an Orlando TV station told the story of a man who was promised that the Solar Panel System installed by Vision Solar would save him $200 a month. Instead, the system delivers on just 6% of the power his family needs, and he has been saddled with over $50,000 in debt to the Financing Companies.

109.    Despite the public attention Vision Solar's conduct garnered, Defendants continued making loans to the victims of Vision Solar because it was wildly profitable for Defendants to do so.

110.    Thankfully, Vision Solar is no longer in business. On November 29, 2023, Vision Solar furloughed all employees due to a lack of funding, notifying employees via an email which read:

> We are placing the entire organization on a mandatory furlough. By definition a furlough is a temporary pause of paid employment. For our staff this means that for the time being, no one is to report to the office or work on projects for vision solar.

111.    On December 15, 2023, Vision Solar admitted it had failed to secure additional funding for its operations and had thus "made the incredibly difficult announcement to cease operations indefinitely."

112.    On December 28, 2023, Vision Solar filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey.

113.    As a result, Defendants' victims now have no hope of having their Solar Panel System installations completed, and Vision Solar and Defendants have retained the benefits of the payments and indebtedness of Plaintiffs and members of the Class. Plaintiffs and members of the Class are stuck with tens of thousands of dollars of loans from Dividend taken out by Plaintiffs and members of the Class for Solar Panel Systems which are not performing due to defective unlicensed installations and failures to secure permits and/or licenses and have nowhere to turn to remedy the situation.

114.    Additionally, many Plaintiffs are facing mounting fines because the systems "installed" at their residences are out of compliance, contrary to Vision Solar's promises.

115.    Unsurprisingly, Defendants for the most part believe the homeowners victimized by this conduct should continue to be responsible for the loans they were induced to take out and refuse to cancel the loans.

## V.    PLAINTIFF ALLEGATIONS

### A.    THE STAMNES PLAINTIFF

116.    The Stamnes Plaintiff agreed to purchase Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel Systems via financing provided by Defendants in December 2022.

117.    After the Stamnes Plaintiff agreed to finance their purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by the Stamnes Plaintiffs, and thereby increased the Stamnes Plaintiff's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

118.    Defendants and/or Vision Solar did not disclose to the Stamnes Plaintiff that a large "Contractor Fee" or "Platform Fee" would be added to the balance of the Stamnes Plaintiff's loan they had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, the Stamnes Plaintiff was unaware that the balance of their loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought he was paying a lower APR than they ultimately have been.

119.    As a result of Defendants' undisclosed, deceptive, addition to the Stamnes Plaintiff's loan balance, the Stamnes suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Stamnes understood from Defendants' disclosures that Stamnes would be indebted as a result of the loan borrowed from Defendants, loan

payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

120.    Stamnes bought a Solar Panel System from Vision Solar via financing provided by Dividend.

121.    Vision Solar unfairly and deceptively induced Stamnes to borrow from Defendants to purchase a Solar Panel System in December 2022.

122.    Specifically, Vision Solar made the following misrepresentations to the Stamnes Plaintiff:

a.    Written misrepresentations in the Vision Solar contracts reviewed, signed, and relied upon by the Stamnes Plaintiffs stating that (1) "The services to be provided by Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes." (emphasis added); and (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."

b.    That the Stamnes Plaintiff would have a zero electric bill with FPL except for maintenance charges.

     c.       That Vision Solar would repair their roof at no cost if needed; and

     d.       That the Stamnes Plaintiff would receive a large federal tax credit to help offset the cost of the Solar Panel System.

123.     Contrary to what Stamnes was promised, Vision Solar:

     a.       Did not obtain the permits required to install and connect the Solar Panel System to the power grid.

     b.       The work performed at the Stamnes' property was not performed in accordance with local, state, or national electrical codes. Specifically, Vision Solar used unlicensed electricians and unlicensed contractors to install the Solar Panel Systems at the Stamnes' property.

     c.       The Stamnes Plaintiff has not seen any savings on their monthly utility bills; and

     d.       The Stamnes Plaintiff have yet to receive any tax credit.

124.     In addition to the misrepresentations made by Vision Solar to the Stamnes Plaintiff, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Stamnes Plaintiff into agreeing to purchase and finance a Solar Panel System with Defendants.

125.     Contrary to these representations, the Solar Panel System installed at the Stamnes' home was improperly installed, out of compliance with local laws and licenses and without the necessary permits.

126.     Additionally, the Solar Panel System installed at the Stamnes Plaintiff's home has significantly underperformed compared to the promised performance.

127.     Despite the Solar Panel System's non-functionality, the Stamnes Plaintiff has been making payments to Defendants attributable to this Solar Panel System.

128.    Before Vision Solar filed for bankruptcy protection, Vision Solar's Concierge and Customer Retention departments told the Stamnes Plaintiff that the system was producing as intended, but if they wanted to improve the system's performance, they could add additional solar panels at an additional cost.

129.    Defendants did not disclose to the Stamnes Plaintiff that a large "Contractor Fee" or "Platform Fee" would be added to the balance of the Stamnes loan they had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, the Stamnes Plaintiff was unaware that the balance of his loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought he was paying a lower APR than he ultimately had been.

130.    As a result of these deceptive and unfair business practices the Stamnes Plaintiff has suffered ascertainable harm and actual damages, including without limitation, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in their monthly expenses, time and aggravation related to making any attempt to get a solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

**B.    THE CLOUSER PLAINTIFF**

131.    The Clouser Plaintiff agreed to purchase a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants in April 2023.

132.    After the Clouser Plaintiff agreed to finance their purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by the Clouser Plaintiff, and thereby increased the Clouser Plaintiff's indebtedness to Defendants,

by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

133.    Defendants and/or Vision Solar did not disclose to the Clouser Plaintiff that a large "Contractor Fee" or "Platform Fee" would be added to the balance of the Clouser Plaintiff's loan he had agreed to take out from Dividend to purchase the Solar Panel System. Because of this, the Clouser Plaintiff was unaware that the balance of their loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought they were paying a lower APR than they ultimately have been.

134.    As a result of Defendants' undisclosed, deceptive, addition to the Clouser Plaintiff's loan balance, the Clouser Plaintiff has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Clouser understood from Defendants' disclosures that Clouser would be indebted as a result of the loan borrowed from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

135.    Additionally, Vision Solar unfairly and deceptively induced Clouser to borrow from Defendants to purchase a Solar Panel System in April 2023 when a Vision Solar sales representative visited their home in Florida.

136.    Specifically, Vision Solar made the following misrepresentations to the Clouser Plaintiff:

      a.    Written misrepresentations in the Vision Solar contracts reviewed, signed, and relied upon by Clouser stating that (1) "The services to be provided by

Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes." (emphasis added); and (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."

    b.    That the Clouser Plaintiff would save thousands of dollars on their electric bill and the Solar Panel System would "pay for itself";

    c.    That Vision Solar would repair their roof at no cost if needed; and

    d.    That the Clouser Plaintiff would receive a large federal tax credit to help offset the cost of the Solar Panel System.

137.    Contrary to what Clouser was promised, Vision Solar:

    a.    Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result, the system has not yet been activated;

    b.    Clouser has not seen any savings on his monthly utility bills; and

    c.    The Clouser Plaintiff has yet to receive any tax credit

138.    In addition to the misrepresentations made by Vision Solar to the Clouser Plaintiff, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Clouser Plaintiff into agreeing to purchase and finance a Solar Panel System with Defendants, including, but not limited to:

      a.     Ensuring that the required permits would arrive on-site;

      b.     Pressuring Clouser to sign the agreement the same day as the visit, without allowing for their review; and

      c.     Applying for and executing a loan agreement with Defendant Dividend Finance on behalf of Plaintiff Stephen Clouser for the purchase and installation of the Solar Panel System without his knowledge

139.    Vision Solar began installation of the Solar Panel System on June 22, 2023 without obtaining permits and never obtained the required permits. As a result, the Solar Panel System installed at the Clouser residence has never obtained permission to operate from their municipality, has never functioned at all, and is not hooked up to the power grid.

140.    Vision Solar's Concierge and Customer Retention departments have deflected and ignored the Clouser Plaintiffs' complaints, including by:

      a.     Falsely representing that Vision Solar was waiting for a permit from the county;

      b.     Misinforming Clouser that an application for the design of the Solar Panel System was submitted to the Clouser Plaintiff's Homeowner's Association; and

      c.     Ensuring that a copy of the contract would be mailed to the Clouser Plaintiff.

141.    In addition to the above-described conduct, Defendants did not disclose to the Clouser Plaintiff that a large "Contractor Fee" or "Platform Fee" would be added to the balance of the Clouser Plaintiff's loan he had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Clouser was unaware that the balance of his loan included a large

Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought they were paying a lower APR than they ultimately have been.

142.    As a result of these deceptive and unfair business practices the Clouser Plaintiff has suffered ascertainable harm and actual damages, including without limitation, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in his monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

### C.    PLAINTIFF MCGEOCH

143.    Plaintiff McGeoch was approached by a representative of Vision Solar for the installation of a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants in August 2023.

144.    After Plaintiff McGeoch unknowingly agreed to finance his purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by Plaintiff McGeoch, and thereby increased Plaintiff McGeoch's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

145.    Plaintiff McGoech was told that by entering his initials, he was applying for eligibility for a loan and was unaware that he was committing to taking out a loan to purchase a Solar Panel System.

146.    Defendants and/or Vision Solar did not disclose to Plaintiff McGeoch that a large "Contractor Fee" or "Platform Fee" would be added to the balance of Plaintiffs McGeoch's loan he had unknowingly agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Plaintiff McGeoch was unaware that the balance of his loan included a large Platform Fee

unrelated to the cost of the Solar Panel System or installation services, and thought he was paying a lower APR than they ultimately have been.

147.    As a result of Defendants' undisclosed, deceptive, addition to the Plaintiffs McGeoch's loan balance, Plaintiff McGeoch has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Plaintiff McGeoch understood from Defendants' disclosures that Plaintiff McGeoch would be indebted as a result of the loan borrowed from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in his monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

148.    Vision Solar unfairly and deceptively induced Plaintiff McGeoch to borrow from Defendants to purchase a Solar Panel System in August 2023.

149.    Specifically, Vision Solar made the following misrepresentations to Plaintiff McGeoch

        a.    That Plaintiff McGeoch would only be responsible for paying $320 a month which would include the Solar Panels and the electric bill; and

        b.    That Plaintiff McGeoch would receive a large federal tax credit to help offset the cost of the Solar Panel System.

150.    Contrary to what Plaintiff McGeoch was promised, Vision Solar:

        a.    Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result the house has yet to be activated.

        b.    The work performed at the McGeoch property was not performed in accordance with local, state, or national electrical codes. Specifically,

Vision Solar used unlicensed electricians and unlicensed contractors to install the Solar Panel Systems at the McGeoch property.

c.    Plaintiff McGeoch has not seen any savings on his monthly utility bills; and

d.    Plaintiff McGeoch has yet to receive any tax credit and was told by his accountant that he will not receive any tax credit as things currently stand.

151.    In addition to the misrepresentations made by Vision Solar to Plaintiff McGeoch, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff McGeoch into unknowingly agreeing to purchase and finance a Solar Panel System with Defendants, including, but not limited to pressuring Plaintiff McGeoch to sign the agreement the same day as the home inspection without allowing him to discuss with his wife.

152.    Despite the Solar Panel System's non-functionality, Plaintiff McGeoch has been making payments to Defendants attributable to this Solar Panel System.

153.    Before Vision Solar filed for bankruptcy protection, Vision Solar's Concierge and Customer Retention departments deflected and ignored Plaintiff McGeoch's complaints and was told that he could not cancel the purchase of the Solar Panel System or he would have to pay a fine of $5000.00.

154.    As a result of these deceptive and unfair business practices Plaintiff McGeoch has suffered ascertainable harm and actual damages, including without limitation, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in his monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

**D.    PLAINTIFF MCCALLUM**

155.    Plaintiff McCallum agreed to purchase a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants during the Class Period.

156.    After Plaintiff McCallum agreed to finance their purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by Plaintiff McCallum, thereby increased Plaintiff McCallum's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

157.    Defendants and/or Vision Solar did not disclose to Plaintiff McCallum that a large "Contractor Fee" or "Platform Fee" would be added to the balance of Plaintiff McCallum's loan she had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Plaintiff McCallum was unaware that the balance of her loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought she was paying a lower APR than they ultimately have been.

158.    As a result of Defendants' undisclosed, deceptive, addition to Plaintiffs McCallum's loan balance, Plaintiff McCallum has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Plaintiff McCallum understood from Defendants' disclosures that Plaintiff McCallum would be indebted as a result of the loan borrowed from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in her monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

159.     Additionally, Vision Solar made the following misrepresentations to Plaintiff McCallum regarding the Solar Panel Systems (1) "The services to be provided by Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes."; (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."; and (4) that Vision Solar would repair their roof at no cost if needed.

160.     Contrary to what Plaintiff McCallum was promised, Vision Solar (i) Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result Plaintiff McCallum's Solar Panel System was not connected to the power grid; and (ii) the work performed at the McCallum property was not performed in accordance with local, state, or national electrical codes. Specifically, Vision Solar used unlicensed electricians and unlicensed contractors to install the Solar Panel Systems at the McCallum property.

**E. PLAINTIFF RAMOS**

161.     Plaintiff Ramos agreed to purchase a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants during the Class Period.

162.     After Plaintiff Ramos agreed to finance their purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by Plaintiff Ramos, thereby increased Plaintiff Ramos's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

163.    Defendants and/or Vision Solar did not disclose to Plaintiff Ramos that a large "Contractor Fee" or "Platform Fee" would be added to the balance of Plaintiff Ramos's loan she had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Plaintiff Ramos was unaware that the balance of her loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought she was paying a lower APR than they ultimately have been.

164.    As a result of Defendants' undisclosed, deceptive, addition to Plaintiff Ramos's loan balance, Plaintiff Ramos has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Plaintiff Ramos understood from Defendants' disclosures that Plaintiff Ramos would be indebted as a result of the loan borrowed from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in her monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

165.    Additionally, Vision Solar made the following misrepresentations to  Plaintiff Ramos regarding the Solar Panel Systems (1) "The services to be provided by Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes."; (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."; and (4) that Vision Solar would repair their roof at no cost if needed.

166.    Contrary to what Plaintiff Ramos was promised, Vision Solar (i) Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result Plaintiff Ramos's Solar Panel System was not connected to the power grid; and (ii) the work performed at the Ramos property was not performed in accordance with local, state, or national electrical codes. Specifically, Vision Solar used unlicensed electricians and unlicensed contractors to install the Solar Panel Systems at the Ramos property.

### F. PLAINTIFF KLINGLER

167.    Plaintiff Klinger agreed to purchase a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants.

168.    After Plaintiff Klingler agreed to finance his purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by Plaintiff Klingler, thereby increased Plaintiff Klingler's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

169.    Defendants and/or Vision Solar did not disclose to Plaintiff Klingler that a large "Contractor Fee" or "Platform Fee" would be added to the balance of Plaintiff Klingler's loan he had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Plaintiff Klingler was unaware that the balance of his loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought he was paying a lower APR than they ultimately have been.

170.    As a result of Defendants' undisclosed, deceptive, addition to Plaintiff Klingler's loan balance, Plaintiff Klingler has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Plaintiff Klingler understood from Defendants' disclosures that Plaintiff Klingler would be indebted as a result of the loan borrowed

from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in his monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

171.     Additionally, Vision Solar made the following misrepresentations to Plaintiff Klingler regarding the Solar Panel Systems (1) "The services to be provided by Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes."; (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."; and (4) that Vision Solar would repair their roof at no cost if needed.

172.     Contrary to what Plaintiff Klingler was promised, Vision Solar (i) Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result Plaintiff Klingler's Solar Panel System was not connected to the power grid; and (ii) the work performed at the Klingler property was not performed in accordance with local, state, or national electrical codes. Specifically, Vision Solar used unlicensed electricians and unlicensed contractors to install the Solar Panel Systems at the Klingler property.

### G. PLAINTIFF HERRINGTON

173.     Plaintiff Herrington agreed to purchase a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants during the Class Period.

174.     After Plaintiff Herrington agreed to finance his purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by Plaintiff Herrington, and thereby increased Plaintiff Herrington's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

175.     Defendants and/or Vision Solar did not disclose to Plaintiff Herrington that a large "Contractor Fee" or "Platform Fee" would be added to the balance of Plaintiff Herrington's loan he had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Plaintiff Herrington was unaware that the balance of his loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought he was paying a lower APR than he ultimately was.

176.     As a result of Defendants' undisclosed, deceptive, addition to Plaintiff Herrington's loan balance, Plaintiff Herrington has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Plaintiff Herrington understood from Defendants' disclosures that Plaintiff Herrington would be indebted as a result of the loan borrowed from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

## H.  PLAINTIFF YOUNG

177.     Plaintiff Young agreed to purchase a Solar Panel System from Vision Solar and to finance the purchase of the Solar Panel System via financing provided by Defendants in during the Class Period.

178.    After Plaintiff Young agreed to finance his purchase of a Solar Panel System via a loan from Defendants, Defendants and Vision Solar inflated the balance of the loan taken out by Plaintiff Young, and thereby increased Plaintiff Young's indebtedness to Defendants, by adding a fee referred to by Defendants and Vision Solar as a "Contractor Fee" and/or a "Platform Fee".

179.    Defendants and/or Vision Solar did not disclose to Plaintiff Young that a large "Contractor Fee" or "Platform Fee" would be added to the balance of Plaintiff Young's loan he had agreed to take out from Dividend to purchase Solar Panel Systems. Because of this, Plaintiff Young was unaware that the balance of his loan included a large Platform Fee unrelated to the cost of the Solar Panel System or installation services, and thought he was paying a lower APR than he ultimately have been.

As a result of Defendants' undisclosed, deceptive, addition to Plaintiff Young's loan balance, Plaintiff Young has suffered ascertainable harm and actual damages, including without limitation, indebtedness exceeding the amount Plaintiff Young understood from Defendants' disclosures that Plaintiff Young would be indebted as a result of the loan borrowed from Defendants, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

## CLASS ALLEGATIONS

180.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of a proposed class, defined as:

> All Florida citizens who entered into lending agreements with Defendants to borrow money for the purchase of a Solar Panel System from Vision Solar during the applicable statute of limitations period (the "Class").

181.    Plaintiffs reserve the right to modify or refine the definitions of the Classes based upon discovery of new information and to accommodate any of the Court's manageability concerns.

182.    Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

183.    **Ascertainability.** The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of the Classes. Further, the Classes can be readily identified through records maintained by Defendants.

184.    **Numerosity (Rule 23(a)(1)).** The Classes are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Classes, as herein identified and described, is not known, but upon information and belief there are thousands of individuals and entities that purchased Solar Panel Systems from Vision Solar with funds borrowed from Defendants.

185.    **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individuals, including:

a.      Whether Defendants' use of Vision Solar to originate loans in Florida constitutes an unfair business practice under Florida law;

43

b.      Whether Defendants' failure to disclose the addition of a large, Platform Fee to the loan balances of Plaintiffs and members of the Class(es) constitutes deceptive conduct under the laws of Florida;

c.      Whether Defendants' conduct constitutes deceptive conduct

d.      Whether Defendants' conduct constitutes unfair conduct;

e.      Whether Defendants knowingly financed purchases of non-functioning Solar Panel Systems to earns fees for the purpose of securitizing and originating loans, and the subsequent sale of loans to third-party investors.

f.      Whether Defendants collected loan payments from homeowners before the Solar Panel Systems have been connected to the power grid;

g.      Whether Defendants knew Vision Solar salespeople were trained to use fraudulent, deceptive, unfair, and misleading tactics;

h.      Whether Defendants knew Vision Solar targeted vulnerable individuals and engaged in unfair, deceptive, and fraudulent such as running unauthorized credit checks and forging signatures on contracts;

i.      Whether Defendants knew Vision Solar systematically misrepresented the benefits, eligibility for tax credits, and financial terms of the loans;

j.      Whether Defendants knew Vision Solar failed to ensure proper permitting, licensing, and installation of Solar Panel Systems;

k.      Whether Defendants knew Vision Solar's Concierge Service and Customer Retention departments used unfair and deceptive tactics to prevent customers from canceling their contracts;

l.      Whether Defendants supported and actively furthered Vision Solar's misrepresentations by offering loan terms that mislead homeowners into believing they will receive a substantial federal tax credit as a result of Solar Panel System ownership;

m.     Whether Defendants and Vision Solar violated federal and state law;

n.      Whether Plaintiffs and Class members suffered damages as a result of the misconduct alleged herein;

o.      Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

186.   **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Classes. Plaintiffs and members of the Classes suffered injuries as a result of Defendants' wrongful conduct that are uniform across the Class(es).

187.   **Adequacy (Rule 23(a)(4))**. Plaintiffs will continue to represent and protect the interests of the Class(es) fairly and adequately. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Classes.

188.   **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the Courts and

Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes, and would be dispositive of the interests of the other members not party to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

189.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

190.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

191.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

**CLAIMS FOR RELIEF**

**CLAIM 1**
**UNJUST ENRICHMENT**

192.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

193.    Defendants are "holders" within the meaning of the FTC Holder Rule and the state analogues of Florida.

194.    The loan agreement between Defendants and Plaintiffs and/or Class Members for the purchase and installation of Solar Panel Systems are "negotiable instruments," (as defined under the applicable statutes of Florida, adopting the FTC Holder rule) held by and/or made payable to Dividend. Pursuant to the FTC Holder Rule state analogues of Florida, Defendants, as holders, are subject to defenses and claims Plaintiffs and members of the Class have against Vision Solar.

195.    Additionally, Defendants incorporated the following language into loan agreements with Plaintiffs and members of the Class(es), as required by the FTC's Holder Rule, 16 C.F.R. § 433: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

196.    To the extent that Defendants are each a "holder in due course" as defined by FTC Holder Rule state analogues of Florida, if Defendants took the notes for value, in good faith, and without notice that Plaintiffs or Class Members had any defense or claim in recoupment, Defendants are still subject to all claims and defenses that Plaintiffs and Class Members could assert against Vision Solar under the FTC's Holder Rule, 16 C.F.R. § 433, including a claim for Unjust Enrichment.

197.    Plaintiffs and members of the Classes conferred substantial benefits on Vision Solar and Defendants by borrowing from Defendants to pay Vision Solar and purchase Solar Panel Systems from Vision Solar. Defendants and Vision Solar knowingly and willingly accepted and enjoyed these benefits.

198.    Vision Solar and Defendants, as participants in the wrongful acts described and involvement in the deceptive sales, are liable for the wrongful acts committed by Vision Solar on Defendants' behalf.

199.    Vision Solar and Defendants either knew or should have known that Plaintiffs and members of the Classes entered into the financing agreements with Defendants with the expectation that the Solar Panel Systems would have the qualities, characteristics, and suitability for use represented and warranted by Vision Solar, and that Vision Solar would act in accordance with the representations made to Plaintiffs and members of the Classes.

200.    Despite knowing of Vision Solar's misconduct, Defendants continued lending to Vision Solar's victims because more loans meant more profits for Defendants from origination fees, and Defendants further profited from packaging and selling the loans it originates to third-parties.

201.    Vision Solar and Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and members of the Classes.

202.    Plaintiffs and members of the Classes are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Vision Solar and Defendants, plus interest thereon.

203.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available under the laws.

**CLAIM 2**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. § 501.201, *et seq.***

204.    The Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

205.    The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is designed to protect consumers and businesses from unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

206.    Under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), a **"deceptive act"** or **"unfair practice"** is broadly defined to protect consumers and businesses from harmful practices in the marketplace.

207.    A deceptive act is one that is likely to mislead a consumer acting reasonably under the circumstances.

208.    An unfair practice is one that offends established public policy and is unethical, oppressive, unscrupulous, or substantially injurious to consumers.

209.    As described herein, Defendants are liable to Plaintiffs and members of the Class(es) for Vision Solar's conduct as a holder in due course pursuant to the FTC Holder Rule and state analogues, including that of Florida.

210.    The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201, *et seq.*, provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

211.    Pursuant to Fla. Stat. § 501.211(1), anyone aggrieved by a violation of FDUTPA may bring an action to obtain a declaratory judgment that an act or practice violates FDUTPA and to enjoin such person who has violated, is violating, or is otherwise likely to violate FDUTPA.

212.    The provisions of the FDUTPA shall be "construed liberally" to promote and "protect the consuming public and legitimate business enterprises from those who engage in unfair

methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

213.    Pursuant to Fla. Stat. § 501.211(2), any person who has suffered a loss as a result of a violation of FDUTPA may bring an action for actual damages, attorney's fees, and court costs.

214.    Defendants engaged in unfair and deceptive conduct by using Vision Solar to originate loans despite having knowledge of the unfair and deceptive conduct Vision Solar used to originate loans.

215.    Defendants are "holders" within the meaning of Fla. Stat. § 671.201(b)(21). The loan agreement between Defendants and Plaintiffs and/or Class Members for the purchase and installation of Vision Solar's solar panels are "negotiable instruments," as defined by Fla. Stat. § 673.1041, held by and/or made payable to Defendants. Pursuant to Fla. Stat. § 673.3051, Defendants, as holders, are subject to defenses and claims in connection with the loan agreements.

216.    Defendants incorporated the following language into loan agreements with Plaintiffs, as required by the FTC's Holder Rule, 16 C.F.R. § 433: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

217.    To the extent that Defendants are "holders in due course" as defined by Fla. Stat. § 673.3021, if it took the notes for value, in good faith, and without notice that Plaintiffs or Class Members had any defense or claim in recoupment pursuant to Fla. Stat. § 673.3051, Defendants are still subject to all claims and defenses that Plaintiffs and Class Members could assert against Vision Solar under the FTC's Holder Rule, 16 C.F.R. § 433, including a claim pursuant to the FDUPTA.

218.    Defendants both through their communications to Plaintiffs and members of the Class directly and through Vision Solar authorized and directed to market and sell their loans, have violated FDUTPA by engaging in the deceptive practices described herein, including but not limited to:

    a.   Using sales proposals and verbal marketing to Plaintiffs and members of the Class that purport to identify costs of taking out a loan but failing to identify Defendants' Platform Fees or include them in purported calculation of such costs;

    b.   Failing to disclose or identify the fact that Defendants charge large Platform Fees as a condition of extending credit and the amount of such fees;

    c.   Preventing Vision Solar from otherwise identifying or explaining Defendants' Platform Fees to consumers and from discussing less-costly "cash" purchase options;

    d.   Using sales proposals to Plaintiffs and members of the Class that falsely identify a purported price to be paid for parts and installation related to the solar-panel system when in fact a large portion of the stated price and resulting principal balance is paid to/retained by Defendants rather than disbursed to purchase the system;

    e.   Providing loan documents to Plaintiffs and members of the Class that state an annual percentage rate and finance charge that does not include Defendants' Platform Fees in the calculation and is inaccurately low;

    f.   Providing loan documents with an "itemization of amount financed" that falsely represents that the principal loan balance will be paid to the Vision

Solar when in fact a large portion of the stated price and resulting principal balance is paid to/retained by Defendants rather than disbursed to purchase the system;

219.    Providing other documents to Plaintiffs and members of the Class and otherwise expressing that the price listed in purchase agreements for the solar-panel system sold is for parts and installation and that the principal loan balance will be paid to the Vision Solar when in fact a large portion of the stated price and resulting principal balance is paid to/retained by Defendants rather than disbursed to purchase the system;

220.    Each of the above practices (a) provide individual and independent bases for injunctive and other relief and (b) together create a false net impression for Defendants' borrowers such as Plaintiffs and members of the Class that the principal balance of their loan pays for parts and installation of the solar-panel system and that the cost of Defendants' loans is negligible and reflective only of the annual interest rate charged after origination and repayment begins.

221.    Defendants, both through their communications to Plaintiffs and members of the Class and through Vision Solar authorized and directed to market and sell their loans, have also repeatedly violated and continue to violate the FDUTPA by engaging in the unfair practices described herein.

222.    Specifically, Defendants' above-described unfair practices include, but are not limited to the following summarized practices

a.    Participating in consumer-lending practices that offend public policy related to full disclosure of lending terms as reflected in Florida law;

b.    Taking advantage of unequal knowledge and bargaining position and preventing consumers at a knowledge disadvantage about Defendants'

loans from understanding and comparing costs of payment options for solar-panel purchases;

c.   Hiding financing costs that consumers expect to be prominently disclosed and burying such costs in the stated price and original principal owed and paid by the consumer while downplaying the principal cost in sales proposals built around a low monthly payment; and

d.   Preventing Plaintiffs and members of the Class from understanding and inquiring about the higher cost of the system compared to most sellers that offer lower-priced cash sales that do not include Defendants' fees.

223.   Each of the above practices (a) provide individual and independent bases for injunctive and other relief and (b) taken together demonstrate the unfairness of Defendants' acts and practices, which prevent borrowers from understanding Defendants' lending terms and how they compare to other payment options.

224.   The above deceptive and unfair practices were and are undertaken by Defendants with the intent that consumers rely thereon in connection with the sale of Defendants' loans. As described above, the cost of financing is an obvious material term for consumers in determining whether to (a) purchase a system, (b) take out a loan to finance the purchase, and (c) finance from a particular company at a particular rate. Misstating and hiding the true cost of financing as described above is intended to induce more consumers to purchase from Vision Solar and finance those purchase through Defendants' loans.

225.   The misleading and unfair practices above concern affirmative communications to consumers concerning the price of systems and cost of financing and tend to create a false net impression for consumers concerning those material aspects of sales. But to the extent such

conduct is in any respect deemed to constitute any kind of omission or failure to disclose, Defendants had and have a duty to disclose such material information related to the cost of financing because, among other circumstances detailed in the general allegations above:

    a. Defendants and their partner Vision Solar have special if not exclusive knowledge concerning the Platform Fees charged by Defendants and added to the stated price of systems offered for purchase;

    b. Defendants and their partner Vision Solar have special knowledge that consumers may be able to purchase systems for cash prices that do not include the Platform Fees and that can be financed by other lenders that do not impose such Platform Fees;

    c. Vision Solar offer and describe themselves to consumers as consultants and experts in identifying options for paying for or financing purchases from consumers;

    d. New Jersey laws create a duty and expectation to accurately and prominently disclose the finance charge and annual percentage rate; and Disclosure is required to correct the misleading representations and impression from Defendants and Vision Solar that (a) the stated price for financed systems is for hardware and installation, not financing and (b) the APR stated in sales proposals (and also loan documents) represents the actual cost of financing.

226. Defendants' misrepresentations have caused harm to Plaintiffs and the Class such that consumer restitution and/or disgorgement is an appropriate remedy. This includes refunds for loan repayments and debt relief from loan balances attributed to hidden fees. Defendants have

collected millions in hidden fees that have inflated the costs of thousands of Solar Panel Systems at the expense of Plaintiffs of members of the Class who may never have taken out a loan from Defendants if they would had been informed of the true cost of financing.

227.    Defendants' practice has skewed sales towards their financing, prevented comparison shopping, and given Defendants and their partners an inflated share of the market at the expense of lenders and businesses that obey the law. Defendants' conduct, practices, actions, and material omissions described herein constitute multiple, separate violations of FDUTPA.

228.    As a direct and proximate result of Defendants' and Vision Solar's unfair and deceptive acts and practices, Plaintiffs and other similarly situated Florida homeowners have been aggrieved by Defendants' and Vision Solar's conduct, have suffered damages, and are entitled to relief under FDUTPA, including, but not limited to, actual damages, attorney's fees, and costs.

229.    Plaintiffs individually and on behalf of all others similarly situated, thus seek (a) a declaration that Defendants' acts and practices as described above violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (b) an award of actual damages; (c) an award of attorney's fees and costs pursuant to Fla. Stat. § 501.2105; (d) an order enjoining Defendants from continuing to engage in the unfair and deceptive acts and practices described above; (e) an order for the recission of the sales and financing agreements as well as compensatory damages; and (f) any further relief the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as to each and every count, including:

A.      An order certifying this action and the Classes requested herein as a class action, designating Plaintiffs as the representatives of the Classes, and appointing Plaintiffs' counsel as counsel to the Classes;

B.      An order declaring (i) that Defendants' actions constitute unfair and deceptive business practices in violation of the consumer protection statutes of Florida; (ii) that all agreements between Plaintiffs and members of the Classes and Defendants are null and void; (iii) that Defendants were unjustly enriched as a result of its wrongful conduct at the expense of Plaintiffs and members of the Classes; and (iv) that Defendants are liable to Plaintiffs and members of the Classes as described herein, for damages arising therefrom;

C.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including declaring all contracts between Plaintiffs and Defendants null and void, enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

D.      A judgment awarding Plaintiffs and members of the Classes all appropriate damages, in an amount to be determined at trial;

E.      A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F.      A judgment awarding Plaintiffs and members of the Classes prejudgment and post-judgment interest, as permitted by law;

G.      A judgment awarding Plaintiffs and members of the Classes costs and fees, including attorneys' fees, as permitted by law; and

H.      Other legal, equitable or further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL**

Plaintiffs demand a trial for all issues so triable.

DATED: July 1, 2024                                      Respectfully submitted,


                                                        */s/ Joshua S. Horton*
                                                        The Joshua S. Horton Law Firm, PA
                                                        Attorney for Plaintiff
                                                        107 Pond Apple Lane # 102
                                                        Jupiter, FL 33458
                                                        561-764-4041 - Telephone
                                                        561-584-5212 – Facsimile
                                                        Email: josh@joshuahortonlaw.com
                                                        Florida Bar No: 1009130